The Senate of the Commonwealth of Puerto Rico v. Acevedo-Vila et al Doc. 20


UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

THE SENATE OF THE COMMONWEALTH OF PUERTO RICO, through its President, Hon. Kenneth McClintock,

Plaintiff,

v.

Hon. Aníbal Acevedo Vilá, in his official capacity as GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO; Hon. Juan Carlos Méndez, in his official capacity as SECRETARY OF THE TREASURY OF THE COMMONWEALTH OF PUERTO RICO; and Eng. Ileana Fas Pacheco, in her official capacity as DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET,

Defendants.

Civil No. 05-2082 (JAF)

**OPINION AND ORDER**

On October 11, 2005, Plaintiff, the Senate of the Commonwealth of Puerto Rico ("Plaintiff" or "the Senate"), filed the present action against Defendants, Aníbal Acevedo Vilá ("the Governor"), Juan Carlos Méndez, and Ileana Fas Pacheco in their official capacities ("Defendants" or, collectively, "the Executive Branch"), seeking injunctive relief under section 37 of the Federal Relations Act ("FRA"), 48 U.S.C. § 821 (2003). Docket Document No. 1. On October 12, 2005, we ordered the parties to file memoranda regarding our jurisdictional power to hear this case. Docket Document No. 6. On

Dockets.Justia.com

October 17, 2005, both parties complied with the order. Docket Document Nos. 14, 15, 16. Defendants concomitantly moved to dismiss for lack of subject matter jurisdiction. Docket Document No. 14. Upon review of the parties' submissions, we find that Plaintiff's claim does not bear upon a federal question. Accordingly, we do not have subject matter jurisdiction over this matter.

**II.**

**Factual Synopsis**

The present case involves a power struggle between the Executive and Legislative Branches of the Commonwealth of Puerto Rico. On July 1, 2005, the Legislative Assembly (consisting of two houses, one of which is the Senate) submitted the General Budget for fiscal year 2005-2006 ("the Budget FY05") to the Governor for his signature. The Governor did not sign the Budget FY05 within thirty days of its submission, effectively vetoing the bill. Absent a budget for the present fiscal year, the appropriations approved for the previous year ("the Budget FY04") remained in effect. On August 30, 2005, the Governor issued an executive order redistributing the appropriations stipulated in the Budget FY04.

Plaintiff argues that the August 30 order amounted to an executive usurpation of legislative power, as the Governor unilaterally altered the Budget FY04's appropriations as they applied to the 2005-2006 fiscal year, effectively creating a new budget by law without the legislative branch's approval.

**III.**

**Standard of Review**

Under Rule 12(b)(1), a defendant may move to dismiss an action against him for lack of federal subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). Federal courts are "courts of limited jurisdiction," and "must 'monitor their jurisdictional boundaries vigilantly.'" Diaz-Rodriguez v. Pep Boys Corp., 410 F.3d 56, 62 n.5 (1st Cir. 2005)(quoting Am. Fiber & Finishing, Inc. V. Tyco Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir. 2004)). Consequently, even absent a motion by the party seeking to avoid federal jurisdiction, this court bares "an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). In either case, the party asserting jurisdiction has the burden of demonstrating its existence. See Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)); Diaz-Rodriguez, 410 F.3d at 58-59. In the case at bar, we raised the jurisdictional issue on our own initiative, but gave both parties the opportunity to voice their respective positions. Docket Document No. 6. Defendant subsequently moved for dismissal. Docket Document No. 14.

Rule 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," including ripeness, mootness, the existence of a federal question,

diversity, and sovereign immunity. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). The present case turns on the existence of a federal question, which presents a "sufficiency challenge." Id. at 363. We will take the plaintiff's "jurisdictionally-significant facts as true" and "assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Id..

**III.**

**Analysis**

Plaintiff argues that the Governor's unilateral manipulation of the Budget FY04 usurps authority delegated by the U.S. Congress to the Puerto Rico Legislative Assembly under § 37 of the FRA, which states, "[t]he legislative authority shall extend to all matters of a legislative character . . . ." 48 U.S.C. § 821. Plaintiff interprets § 821 as establishing federal court jurisdiction over disputes involving the scope of the Commonwealth legislature's authority vis-à-vis other branches of Commonwealth government. Docket Document No. 16.

Both parties acknowledge, at the outset of their respective memoranda, that this court would not have subject matter jurisdiction over this separation-of-powers conflict if Puerto Rico were a state, rather than a commonwealth. Docket Document Nos. 14, 16. When threatened by a perceived usurpation of power from their executive counterparts, state legislatures have frequently sought federal court

intervention under the Guarantee Clause of the U.S. Constitution, which provides: "The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence." U.S. CONST. art. IV, § 4, cl. 1. Federal courts have consistently concluded that the Guarantee Clause does not require states to adopt a specific formula for the separation and sharing of powers among branches of their government, and that separation-of-powers disputes are therefore non-justiciable. Id., construed in New York v. United States, 505 U.S. 144, 183-84 (1992)(except in rare circumstances, Guarantee Clause claims "present nonjusticiable political questions"); Mayor of Phila. v. Educ. Equal. League, 415 U.S. 605, 615 n.13 (1974) ("The Constitution does not impose on the States any particular plan for the distribution of governmental powers."); Colegrove v. Green, 328 U.S. 549, 556 (1946) ("Violation of the great guaranty of a republican form of government in States cannot be challenged in the courts."); Pac. States Tel. & Tel. Co. v. Oregon, 223 U.S. 118, 142 (1912)(holding that whether a state has ceased to be republican in form, in discord with the Guarantee Act, "is a political question, solely for Congress"); Largess v. Supreme Judicial Court for Mass., 373 F.3d 219, 227 (1st Cir. 2004)(the Guarantee Clause does not authorize federal court intervention in state separation-of-powers conflicts).

Defendants argue that as state separation-of-powers disputes are non-justiciable under the Guarantee Clause, so too are Commonwealth disputes non-justiciable under the FRA. Plaintiff argues that this case is distinguishable from Guarantee Clause cases because the current controversy relates to "the authority delegated by Congress" under § 821 rather than "the sovereign powers of a State" implicated by cases brought under the Guarantee Clause. Docket Document No. 16. To assess the merits of both parties' claims, we must examine the history and the evolution of the FRA to determine its full purpose and scope.

**A. Legislative History**

Between 1898 and 1950 Congress passed two organic acts to establish internal government for Puerto Rico. The first of these organic acts, the Foraker Act, was enacted in 1900 and directed that "[t]he [local] legislative authority shall extend to all matters of a legislative character. . . ." 31 Stat. 83 (1900). This directive was later incorporated verbatim as § 37 of the second organic act, the Jones Act, which was passed in 1917. 39 Stat. 964; 48 U.S.C. § 821 (1950).

In 1950, control over the organization of Puerto Rico's internal government shifted when Congress enacted Public Law 600 ("P.L. 600"), authorizing Puerto Rico to draft its own constitution. Pub. L. No. 600, 64 Stat. 319 (1950) (codified at 48 U.S.C. § 731b, et seq.). P.L. 600 required Puerto Rico's new constitution to establish a

republican form of government and a bill of rights, and, effective upon the constitution's ratification, P.L. 600 repealed sections of the Jones Act pertaining to the structure of Puerto Rico's executive, judicial, and legislative branches of government. § 731c; P.L. 600, ch. 446, § 5, 64 Stat. 319 (1950). Among the provisions repealed were sections: vesting legislative powers in the bicameral "Legislature of Puerto Rico"; relating to the election, number, and qualifications of senators and representatives; stipulating terms of office for senators and representatives; and relating to legislative procedures, including with those concerning the approval or veto of legislation by the Governor of Puerto Rico. Id.; Letter of Secretary of Interior Oscar Chapman to Hon. Joseph C. O'Mahoney, Senate Committee on Interior and Insular Affairs (May 19, 1950), H.R. Rep. 50-2275, at 2683-87. Section 37, which vests Puerto Rico's local legislature with legislative authority, was not among the deleted provisions.

**B. Section 37**

Plaintiff avers that § 37's survival into the post-constitutional era indicates that the Puerto Rico Legislature's authority remains delegated by Congress such that "any attempt by the Executive branch to usurp the exercise of legislative authority that was expressly and exclusively delegated by Congress to the Legislative Assembly constitutes a violation of federal law

cognizable by the judicial power of the United States." Docket Document No. 16.

Defendants argue that § 37 cannot justify federal jurisdiction for territorial separation-of-powers disputes because the statute "does not speak at all to the issue of the separation of powers of the government of Puerto Rico," as it "does not define the powers conferred on the Commonwealth's other two branches." Id.

We are convinced that the Defendant's argument is correct. We decline to imply a federally enforceable three-branch local constitutional system for Puerto Rico from § 37 for the important and obvious reason that the people of Puerto Rico have already meticulously crafted their own locally enforceable three-branch constitutional system in 1952. P.R.CONST. Arts. III, IV, V.

Confronted with an apparent dissonance in Congress's complete dismantling of the federally-mandated legislative institutions, on the one hand, and its preservation of § 37, on the other hand, we are unsatisfied with Plaintiff's explanation that Congress thereby intended to protect the Puerto Rico legislature's domain from threats by the Commonwealth's executive and judicial branches. Because § 37 provides that "legislative authority shall extend to all matters of a legislative character," but remains silent as to the executive or judicial branches of government, Plaintiff's interpretation would lead to the surprising result that the Puerto Rico Legislative Assembly enjoys federal review of any actions abrogating the scope of

its authority, while the two remaining branches of Commonwealth government are denied an equivalent privilege. We find this result untenable.

Given P.L. 600's repeal of the Jones Act provisions setting forth the structure of the Puerto Rico Legislature the only explanation we can divine for the simultaneous retention of § 37 is a Congressional intent to preserve a legislative body to effectuate the constitutional task central to P.L. 600's mandate. Our supposition is confirmed by the statute's language: upon Puerto Rico's acceptance of P.L. 600's proposal that it creates its own constitution through an island-wide referendum, "the Legislature of Puerto Rico is authorized to call a constitutional convention to draft a constitution for . . . Puerto Rico." 48 U.S.C. § 731c. Absent § 37's continued existence there would be no legislative body left intact to proceed with the task of creating and implementing a constitution.

As Congress weighed passage of P.L. 600 in the spring of 1950, Secretary of the Interior Oscar L. Chapman advised the Senate Committee on Interior and Insular Affairs that:

> The sections of the organic act which section 5 of the bill would repeal are the provisions of the act concerned primarily with the organization of the local executive, legislative, and judicial branches of the government of Puerto Rico and other matters of purely local concern. These matters would be provided for in any constitution adopted and any local government organized by the people of Puerto Rico.

H.R. Rep. 50-2275, at 2685. The House Committee on Public Lands echoed Chapman's sentiments that the three branches' organization were matters of "purely local concern" in its own P.L. 600 report. Id. at 2681. This "purely local" admonition would be rendered toothless if federal courts were permitted to enforce a designated balance of powers in Puerto Rico by reference to § 37.

Federal case law reflects an clear understanding of Congress's intent to provide for the organization of a constitutional government by the people of Puerto Rico that does not contemplate federal jurisdiction over purely local affairs. See United States v. Quinones, 758 F.2d 40, 41 (1st Cir. 1985)(P.L. 600 was intended "to accord to Puerto Rico the degree of autonomy and independence normally associated with States of the Union."); Puerto Rico v. Branstad, 483 U.S. 219, 229-230 (1987) (quoting Examining Bd. of Engineers, Architects and Surveyors v. Flores de Otero, 426 U.S. 572, 594 (1976)). Since 1953, the U.S. Supreme Court and lower federal courts have determined that "Puerto Rico, like a state, is an autonomous political entity, 'sovereign over matters not ruled by the Constitution.'" Rodriguez v. Popular Democratic Party, 457 U.S. 1 (1982) (quoting Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 673 (1974)). See e.g. Mora v. Mejias, 115 F. Supp. 610 (D.P.R. 1953); Marin v. Univ. of P.R., 346 F. Supp. 470, 481 (D.P.R. 1972); Suarez v. Administrador del Deporte Hipico de P.R., 354 F.Supp. 320 (D.P.R. 1972)).

Pursuant to the Constitution of the Commonwealth, Puerto Rico "elects its Governor and legislature; appoints its judges, all cabinet officials, and lesser officials in the executive branch; sets its own educational policies; determines its own budget; and amends its own civil and criminal code." Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 671-672 (U.S. 1974)(citing Leibowitz, The Applicability of Federal Law to the Commonwealth of Puerto Rico, 56 Geo. L. J. 219, 221 (1967); 28 Dept. of State Bull. 584-589 (1953); Americana of P.R., Inc. v. Kaplus, 368 F.2d 431 (3d Cir. 1966)).

In light of this considerable body of law recognizing Puerto Rico's sovereignty over its local affairs, Plaintiff's allegation that the Commonwealth's separation of powers is mandated by § 37 is unsustainable.

Courts in the U.S. District of Puerto Rico have previously heard cases involving Commonwealth separation-of-powers disputes. See Acosta v. Agosto, 590 F. Supp. 144, 145 (D.P.R. 1984) (silent on federal statutory or constitutional basis for subject matter jurisdiction); Agosto v. Barcelo, 594 F. Supp. 1390, 1395-1396 (D.P.R. 1984) (rev'd, Hernandez-Agosto v. Romero-Barcelo, 748 F.2d 1 (1st Cir. 1984)(remanding to commonwealth court on other grounds). However, we have found no case in which a court has interpreted § 37 to establish federal jurisdiction over power struggles between the legislature and the other branches of government. We refuse to

impinge upon the Commonwealth's sovereignty over its own affairs by adopting Plaintiff's ill-supported reasoning.

**C. Congressional Approval**

Defendants speculate that Plaintiff may be "arguing by implication that Section 37 of the Puerto Rico Federal Relations Act somehow federalized the Puerto Rico Constitution, and particularly those provisions that deal with the separation of powers." Docket Document No. 14. Construed in this manner, Plaintiff's argument still fails. The First Circuit has stated that "the [Puerto Rico] Constitution is not an act of Congress, though congressional approval was necessary to launch it forth." Figueroa v. Puerto Rico, 232 F. 2d 615, 620 (1st Cir. 1956).

As Congress approved the constitution after assuring that it constituted a republican form of government, it also conditioned approval on the constitution's inclusion of a bill of rights. If we were to follow the federalization argument to its logical extension, we would reach the untenable result that federal courts would have exclusive jurisdiction over all disputes involving the Puerto Rico constitution, in order to assure that the Puerto Rico bill of rights continues in force. Fortunately, nothing in P.L. 600 suggests that federal courts should be responsible for interpretation and enforcement of Puerto Rico's constitutional provisions. Federal jurisdiction over such matters would "impute to Congress the perpetration of a monumental hoax" in

its designation of Puerto Rico's governmental organization as a "purely local matter." Figueroa, 232 F.2d at 620.

**IV.**

**Conclusion**

Finally, we cannot refrain from expressing a concern presently in the mind of the vast majority of members of this community to the effect that elected officials in both the executive and legislative branches have abandoned pursuit of reasoned solutions to the many problems confronting present day Puerto Rico. This lawsuit and the underlying controversy are telling evidence that bickering and lack of political vision have obscured the minds of elected officials, to society's great detriment. Entirely absent, meanwhile, is any sense of responsibility or civic duty– virtues that are indispensable to effective governance. Political leadership in both the executive and legislative branches must make paradigmatic changes to their priorities and methods of operation, or the standstill presently facing Puerto Rico will continue unabated.

Federal courts are limited in the remedies that they can provide, and final judgment on the issues relevant herein rests with the voting public, who will make their voices heard on election day. Without regard to political accountability, however, we hope that the parties to this dispute will rise above their petty quagmires to provide positive, result-driven leadership to the Commonwealth of Puerto Rico.

For the reasons stated herein, this court lacks subject matter jurisdiction over the present matter. Plaintiff's claims are **DISMISSED WITH PREJUDICE.** Judgment to be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 19th day of October, 2005.

S/ José Antonio Fusté
JOSE ANTONIO FUSTE
Chief U.S. District Judge