1     UNITED STATES DISTRICT COURT
2        DISTRICT OF PUERTO RICO

3   THE SENATE OF THE COMMONWEALTH
4   OF PUERTO RICO, through its
5   President, Hon. Kenneth
6   McClintock,                          Civil No. 05-2082 (JAF)

7        Plaintiff,

8        v.

9   Hon. Aníbal Acevedo Vilá, in
10  his official capacity as
11  GOVERNOR OF THE COMMONWEALTH OF
12  PUERTO RICO; Hon. Juan Carlos
13  Méndez, in his official
14  capacity as SECRETARY OF THE
15  TREASURY OF THE COMMONWEALTH OF
16  PUERTO RICO; and Eng. Ileana
17  Fas Pacheco, in her official
18  capacity as DIRECTOR OF THE
19  OFFICE OF MANAGEMENT AND
20  BUDGET,

21       Defendants.

22                          **OPINION AND ORDER**

23       On October 11, 2005, Plaintiff, the Senate of the Commonwealth

24  of Puerto Rico ("Plaintiff" or "the Senate"), filed the present

25  action against Defendants, Aníbal Acevedo Vilá ("the Governor"), Juan

26  Carlos Méndez, and Ileana Fas Pacheco in their official capacities

27  ("Defendants" or, collectively, "the Executive Branch"), seeking

28  injunctive relief under section 37 of the Federal Relations Act

29  ("FRA"), 48 U.S.C. § 821 (2003). Docket Document No. 1. On October

30  12, 2005, we ordered the parties to file memoranda regarding our

31  jurisdictional power to hear this case. Docket Document No. 6. On

Civil No. 05-2082 (JAF)                                              -2-

1  October 17, 2005, both parties complied with the order.  <u>Docket</u>
2  <u>Document Nos. 14, 15, 16</u>.  Defendants concomitantly moved to dismiss
3  for lack of subject matter jurisdiction.  <u>Docket Document No. 14</u>.
4  Upon review of the parties' submissions, we find that Plaintiff's
5  claim does not bear upon a federal question.  Accordingly, we do not
6  have subject matter jurisdiction over this matter.

7                                    **II.**

8                           **<u>Factual Synopsis</u>**

9       The present case involves a power struggle between the Executive
10  and Legislative Branches of the Commonwealth of Puerto Rico.  On July
11  1, 2005, the Legislative Assembly (consisting of two houses, one of
12  which is the Senate) submitted the General Budget for fiscal year
13  2005-2006 ("the Budget FY05") to the Governor for his signature.  The
14  Governor did not sign the Budget FY05 within thirty days of its
15  submission, effectively vetoing the bill.  Absent a budget for the
16  present fiscal year, the appropriations approved for the previous
17  year ("the Budget FY04") remained in effect.  On August 30, 2005, the
18  Governor issued an executive order redistributing the appropriations
19  stipulated in the Budget FY04.

20      Plaintiff argues that the August 30 order amounted to an
21  executive usurpation of legislative power, as the Governor
22  unilaterally altered the Budget FY04's appropriations as they applied
23  to the 2005-2006 fiscal year, effectively creating a new budget by
24  law without the legislative branch's approval.

Civil No. 05-2082 (JAF)                                                    -3-

1                                **III.**

2                          **Standard of Review**

3          Under Rule 12(b)(1), a defendant may move to dismiss an action

4    against him for lack of federal subject matter jurisdiction. See FED.

5    R. CIV. P. 12(b)(1).   Federal courts are "courts of limited

6    jurisdiction," and "must 'monitor their jurisdictional boundaries

7    vigilantly.'" Diaz-Rodriguez v. Pep Boys Corp., 410 F.3d 56, 62 n.5

8    (1st Cir. 2005)(quoting Am. Fiber & Finishing, Inc. V. Tyco

9    Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir. 2004)).

10   Consequently, even absent a motion by the party seeking to avoid

11   federal jurisdiction, this court bares "an obligation to inquire sua

12   sponte into its own subject matter jurisdiction." McCulloch v. Velez,

13   364 F.3d 1, 5 (1st Cir. 2004).   In either case, the party asserting

14   jurisdiction has the burden of demonstrating its existence.   See

15   Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003) (citing

16   Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)); Diaz-

17   Rodriguez, 410 F.3d at 58-59.   In the case at bar, we raised the

18   jurisdictional issue on our own initiative, but gave both parties the

19   opportunity to voice their respective positions. Docket Document No.

20   6.  Defendant subsequently moved for dismissal. Docket Document No.

21   14.

22         Rule 12(b)(1) is a "large umbrella, overspreading a variety of

23   different types of challenges to subject-matter jurisdiction,"

24   including ripeness, mootness, the existence of a federal question,

Civil No. 05-2082 (JAF)                                              -4-

1   diversity, and sovereign immunity.  Valentin v. Hosp. Bella Vista,

2   254 F.3d 358, 362-63 (1st Cir. 2001).  The present case turns on the

3   existence of a federal question, which presents a "sufficiency

4   challenge."  Id. at 363.  We will take the plaintiff's

5   "jurisdictionally-significant facts as true" and "assess whether the

6   plaintiff has propounded an adequate basis for subject-matter

7   jurisdiction."  Id.

8                                   III.

9                               **Analysis**

10      Plaintiff argues that the Governor's unilateral manipulation of

11   the Budget FY04 usurps authority delegated by the U.S. Congress to

12   the Puerto Rico Legislative Assembly under § 37 of the FRA, which

13   states, "[t]he legislative authority shall extend to all matters of

14   a legislative character . . . ."  48 U.S.C. § 821.  Plaintiff

15   interprets § 821 as establishing federal court jurisdiction over

16   disputes involving the scope of the Commonwealth legislature's

17   authority vis-à-vis other branches of Commonwealth government.

18   Docket Document No. 16.

19      Both parties acknowledge, at the outset of their respective

20   memoranda, that this court would not have subject matter jurisdiction

21   over this separation-of-powers conflict if Puerto Rico were a state,

22   rather than a commonwealth.  Docket Document Nos. 14, 16.  When

23   threatened by a perceived usurpation of power from their executive

24   counterparts, state legislatures have frequently sought federal court

1    intervention under the Guarantee Clause of the U.S. Constitution,

2    which provides: "The United States shall guarantee to every State in

3    this Union a Republican Form of Government, and shall protect each of

4    them against Invasion; and on Application of the Legislature, or of

5    the Executive (when the Legislature cannot be convened) against

6    domestic Violence." U.S. Const. art. IV, § 4, cl. 1.  Federal courts

7    have consistently concluded that the Guarantee Clause does not

8    require states to adopt a specific formula for the separation and

9    sharing of powers among branches of their government, and that

10   separation-of-powers disputes are therefore non-justiciable. Id.,

11   construed in New York v. United States, 505 U.S. 144, 183-84

12   (1992)(except in rare circumstances, Guarantee Clause claims "present

13   nonjusticiable political questions"); Mayor of Phila. v. Educ. Equal.

14   League, 415 U.S. 605, 615 n.13 (1974) ("The Constitution does not

15   impose on the States any particular plan for the distribution of

16   governmental powers."); Colegrove v. Green, 328 U.S. 549, 556 (1946)

17   ("Violation of the great guaranty of a republican form of government

18   in States cannot be challenged in the courts."); Pac. States Tel. &

19   Tel. Co. v. Oregon, 223 U.S. 118, 142 (1912)(holding that whether a

20   state has ceased to be republican in form, in discord with the

21   Guarantee Act, "is a political question, solely for Congress");

22   Largess v. Supreme Judicial Court for Mass., 373 F.3d 219, 227 (1st

23   Cir. 2004)(the Guarantee Clause does not authorize federal court

24   intervention in state separation-of-powers conflicts).

Civil No. 05-2082 (JAF)                                               -6-

1          Defendants argue that as state separation-of-powers disputes are

2   non-justiciable under the Guarantee Clause, so too are Commonwealth

3   disputes non-justiciable under the FRA. Plaintiff argues that this

4   case is distinguishable from Guarantee Clause cases because the

5   current controversy relates to "the authority delegated by Congress"

6   under § 821 rather than "the sovereign powers of a State" implicated

7   by cases brought under the Guarantee Clause.  Docket Document No. 16.

8   To assess the merits of both parties' claims, we must examine the

9   history and the evolution of the FRA to determine its full purpose

10  and scope.

11  **A.   Legislative History**

12          Between 1898 and 1950 Congress passed two organic acts to

13  establish internal government for Puerto Rico.  The first of these

14  organic acts, the Foraker Act, was enacted in 1900 and directed that

15  "[t]he [local] legislative authority shall extend to all matters of

16  a legislative character. . . ." 31 Stat. 83 (1900).  This directive

17  was later incorporated verbatim as § 37 of the second organic act,

18  the Jones Act, which was passed in 1917.  39 Stat. 964; 48 U.S.C. §

19  821 (1950).

20          In 1950, control over the organization of Puerto Rico's internal

21  government shifted when Congress enacted Public Law 600 ("P.L. 600"),

22  authorizing Puerto Rico to draft its own constitution. Pub. L. No.

23  600, 64 Stat. 319 (1950) (codified at 48 U.S.C. § 731b, et seq.).

24  P.L. 600 required Puerto Rico's new constitution to establish a

1    republican form of government and a bill of rights, and, effective

2    upon the constitution's ratification, P.L. 600 repealed sections of

3    the Jones Act pertaining to the structure of Puerto Rico's executive,

4    judicial, and legislative branches of government. § 731c; P.L. 600,

5    ch. 446, § 5, 64 Stat. 319 (1950).   Among the provisions repealed

6    were   sections:   vesting   legislative   powers   in   the   bicameral

7    "Legislature of Puerto Rico"; relating to the election, number, and

8    qualifications of senators and representatives; stipulating terms of

9    office for senators and representatives; and relating to legislative

10   procedures, including with those concerning the approval or veto of

11   legislation by the Governor of Puerto Rico. Id.; Letter of Secretary

12   of Interior Oscar Chapman to Hon. Joseph C. O'Mahoney, Senate

13   Committee on Interior and Insular Affairs (May 19, 1950), H.R. REP.

14   50-2275, at 2683-87.   Section 37, which vests Puerto Rico's local

15   legislature with legislative authority, was not among the deleted

16   provisions.

17   **B.   Section 37**

18        Plaintiff avers that § 37's survival into the post-

19   constitutional era indicates that the Puerto Rico Legislature's

20   authority remains delegated by Congress such that  "any attempt by

21   the Executive branch to usurp the exercise of legislative authority

22   that was expressly and exclusively delegated by Congress to the

23   Legislative Assembly constitutes a violation of federal law

1  cognizable by the judicial power of the United States." <u>Docket</u>
2  <u>Document No. 16</u>.

3       Defendants argue that § 37 cannot justify federal jurisdiction
4  for territorial separation-of-powers disputes because the statute
5  "does not speak at all to the issue of the separation of powers of
6  the government of Puerto Rico," as it "does not define the powers
7  conferred on the Commonwealth's other two branches." <u>Id.</u>

8       We are convinced that the Defendant's argument is correct. We
9  decline to imply a federally enforceable three-branch local
10  constitutional system for Puerto Rico from § 37 for the important and
11  obvious reason that the people of Puerto Rico have already
12  meticulously crafted their own locally enforceable three-branch
13  constitutional system in 1952. P.R.Const. Arts. III, IV, V.

14      Confronted with an apparent dissonance in Congress's complete
15  dismantling of the federally-mandated legislative institutions, on
16  the one hand, and its preservation of § 37, on the other hand, we are
17  unsatisfied with Plaintiff's explanation that Congress thereby
18  intended to protect the Puerto Rico legislature's domain from threats
19  by the Commonwealth's executive and judicial branches. Because § 37
20  provides that "legislative authority shall extend to all matters of
21  a legislative character," but remains silent as to the executive or
22  judicial branches of government, Plaintiff's interpretation would
23  lead to the surprising result that the Puerto Rico Legislative
24  Assembly enjoys federal review of any actions abrogating the scope of

1    its authority, while the two remaining branches of Commonwealth

2    government are denied an equivalent privilege.  We find this result

3    untenable.

4         Given P.L. 600's repeal of the Jones Act provisions setting forth the

5    structure of the Puerto Rico Legislature the only explanation we can divine

6    for the simultaneous retention of § 37 is a Congressional intent to

7    preserve a legislative body to effectuate the constitutional task

8    central to P.L. 600's mandate.  Our supposition is confirmed by the

9    statute's language: upon Puerto Rico's acceptance of P.L. 600's

10   proposal that it creates its own constitution through an island-wide

11   referendum, "the Legislature of Puerto Rico is authorized to call a

12   constitutional convention to draft a constitution for . . . Puerto

13   Rico." 48 U.S.C. § 731c.  Absent § 37's continued existence there

14   would be no legislative body left intact to proceed with the task of

15   creating and implementing a constitution.

16        As Congress weighed passage of P.L. 600 in the spring of 1950,

17   Secretary of the Interior Oscar L. Chapman advised the Senate

18   Committee on Interior and Insular Affairs that:

19                    The sections of the organic act which section 5
20                    of the bill would repeal are the provisions of
21                    the act concerned primarily with the
22                    organization of the local executive,
23                    legislative, and judicial branches of the
24                    government of Puerto Rico and other matters of
25                    purely local concern.  These matters would be
26                    provided for in any constitution adopted and any
27                    local government organized by the people of
28                    Puerto Rico.

1    H.R. REP. 50-2275, at 2685.  The House Committee on Public Lands

2    echoed Chapman's sentiments that the three branches' organization

3    were matters of "purely local concern" in its own P.L. 600 report.

4    Id. at 2681.  This "purely local" admonition would be rendered

5    toothless if federal courts were permitted to enforce a designated

6    balance of powers in Puerto Rico by reference to § 37.

7         Federal case law reflects an clear understanding of Congress's

8    intent to provide for the organization of a constitutional government

9    by the people of Puerto Rico that does not contemplate federal

10   jurisdiction over purely local affairs.  See United States v.

11   Quinones, 758 F.2d 40, 41 (1st Cir. 1985)(P.L. 600 was intended "to

12   accord to Puerto Rico the degree of autonomy and independence

13   normally associated with States of the Union."); Puerto Rico v.

14   Branstad, 483 U.S. 219, 229-230 (1987) (quoting Examining Bd. of

15   Engineers, Architects and Surveyors v. Flores de Otero, 426 U.S. 572,

16   594 (1976)).  Since 1953, the U.S. Supreme Court and lower federal

17   courts have determined that "Puerto Rico, like a state, is an

18   autonomous political entity, 'sovereign over matters not ruled by the

19   Constitution.'"   Rodriguez v. Popular Democratic Party, 457 U.S. 1

20   (1982) (quoting Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S.

21   663, 673 (1974)).  See e.g. Mora v. Mejias, 115 F. Supp. 610 (D.P.R.

22   1953); Marin v. Univ. of P.R., 346 F. Supp. 470, 481 (D.P.R. 1972);

23   Suarez v. Administrador del Deporte Hipico de P.R., 354 F.Supp. 320

24   (D.P.R. 1972)).

1       Pursuant to the Constitution of the Commonwealth, Puerto Rico

2  "elects its Governor and legislature; appoints its judges, all

3  cabinet officials, and lesser officials in the executive branch; sets

4  its own educational policies; determines its own budget; and amends

5  its own civil and criminal code." <u>Calero-Toledo v. Pearson Yacht</u>

6  <u>Leasing Co.</u>, 416 U.S. 663, 671-672 (U.S. 1974)(citing Leibowitz, The

7  Applicability of Federal Law to the Commonwealth of Puerto Rico, 56

8  Geo. L. J. 219, 221 (1967); 28 Dept. of State Bull. 584-589 (1953);

9  <u>Americana of P.R., Inc. v. Kaplus</u>, 368 F.2d 431 (3d Cir. 1966)).

10      In light of this considerable body of law recognizing Puerto

11  Rico's sovereignty over its local affairs, Plaintiff's allegation

12  that the Commonwealth's separation of powers is mandated by § 37 is

13  unsustainable.

14      Courts in the U.S. District of Puerto Rico have previously heard

15  cases involving Commonwealth separation-of-powers disputes. <u>See</u>

16  <u>Acosta v. Agosto</u>, 590 F. Supp. 144, 145 (D.P.R. 1984) (silent on

17  federal statutory or constitutional basis for subject matter

18  jurisdiction); <u>Agosto v. Barcelo</u>, 594 F. Supp. 1390, 1395-1396

19  (D.P.R. 1984) (rev'd, <u>Hernandez-Agosto v. Romero-Barcelo</u>, 748 F.2d 1

20  (1st Cir. 1984)(remanding to commonwealth court on other grounds).

21  However, we have found no case in which a court has interpreted § 37

22  to establish federal jurisdiction over power struggles between the

23  legislature and the other branches of government.  We refuse to

1   impinge upon the Commonwealth's sovereignty over its own affairs by

2   adopting Plaintiff's ill-supported reasoning.

3   **C.   Congressional Approval**

4       Defendants  speculate  that  Plaintiff  may  be  "arguing  by

5   implication that Section 37 of the Puerto Rico Federal Relations Act

6   somehow federalized the Puerto Rico Constitution, and particularly

7   those provisions that deal with the separation of powers." Docket

8   Document No. 14.   Construed in this manner, Plaintiff's argument

9   still fails.  The First Circuit has stated that "the [Puerto Rico]

10  Constitution is not an act of Congress, though congressional approval

11  was necessary to launch it forth."  Figueroa v. Puerto Rico, 232 F.

12  2d 615, 620 (1st Cir. 1956).

13      As Congress approved the constitution after assuring that it

14  constituted  a  republican  form  of  government,  it  also  conditioned

15  approval on the constitution's inclusion of a bill of rights.  If we were

16  to follow the federalization argument to its logical extension, we would

17  reach  the  untenable  result  that  federal  courts  would  have  exclusive

18  jurisdiction over all disputes involving the Puerto Rico constitution, in

19  order to assure that the Puerto Rico bill of rights continues in force.

20  Fortunately, nothing in P.L. 600 suggests that federal courts should

21  be  responsible  for  interpretation  and  enforcement  of  Puerto  Rico's

22  constitutional provisions.  Federal jurisdiction over such matters

23  would "impute to Congress the perpetration of a monumental hoax" in

Civil No. 05-2082 (JAF)                                                          -13-

1    its designation of Puerto Rico's governmental organization as a
2    "purely local matter."  <u>Figueroa</u>, 232 F.2d at 620.

3                                      **IV.**

4                                 <u>**Conclusion**</u>

5         Finally, we cannot refrain from expressing a concern presently
6    in the mind of the vast majority of members of this community to the
7    effect that elected officials in both the executive and legislative
8    branches have abandoned pursuit of reasoned solutions to the many
9    problems confronting present day Puerto Rico.  This lawsuit and the
10   underlying controversy are telling evidence that bickering and lack
11   of political vision have obscured the minds of elected officials, to
12   society's great detriment.  Entirely absent, meanwhile, is any sense
13   of responsibility or civic duty- virtues that are indispensable to
14   effective governance.  Political leadership in both the executive and
15   legislative branches must make paradigmatic changes to their
16   priorities and methods of operation, or the standstill presently
17   facing Puerto Rico will continue unabated.

18        Federal courts are limited in the remedies that they can
19   provide, and final judgment on the issues relevant herein rests with
20   the voting public, who will make their voices heard on election day.
21   Without regard to political accountability, however, we hope that the
22   parties to this dispute will rise above their petty quagmires to
23   provide positive, result-driven leadership to the Commonwealth of
24   Puerto Rico.

Civil No. 05-2082 (JAF)                                                     -14-

1       For the reasons stated herein, this court lacks subject matter

2   jurisdiction over the present matter.   Plaintiff's claims are

3   **DISMISSED WITH PREJUDICE.** Judgment to be entered accordingly.


4           **IT IS SO ORDERED.**

5       San Juan, Puerto Rico, this 19th day of October, 2005.


6                                       S/ José Antonio Fusté
7                                        JOSE ANTONIO FUSTE
8                                       Chief U.S. District Judge